**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| NICK LEPETSOS, | § | |
| | § | |
|     **Plaintiff,** | § | |
| | § | |
| v. | § | **CASE 1:19-CV-03127** |
| | § | |
| FIRST AMERICAN BANCORP, a | § | |
| Colorado Corporation; FIRST | § | |
| AMERICAN STATE BANK, a Colorado | § | |
| State Chartered Bank, THE | § | |
| COMMITTEE OF THE FIRST | § | |
| AMERICAN BANKCORP 2008 STOCK | § | |
| APPRECIATION RIGHTS PLAN, | § | |
| JOHN ("JAY") R. DAVIDSON, | § | |
| individually, JOHN DOE I, individually, | § | |
| JOHN DOE II OR JANE DOE I, | § | |
| individually, and FIRST AMERICAN | § | |
| STOCK APPRECIATION RIGHTS | § | |
| PLAN, | § | |
| | § | |
|     **Defendants.** | § | |

---

## DEFENDANTS' MOTION TO DISMISS
## PLAINTIFF'S AMENDED COMPLAINT AND BRIEF IN SUPPORT

---

First American Bancorp ("FAB"), First American State Bank ("FASB"), The Committee of the First American Bancorp 2008 Stock Appreciation Rights Plan (the "Committee"), John "Jay" R. Davidson ("Davidson"), John Doe I ("Doe I"), John Doe II or Jane Doe I ("Doe II"), and First American Stock Appreciation Rights Plan ("FASARP" collectively referred to with FAB, the Committee, Davidson, Doe I, and Doe II as "Defendants") hereby submit their Motion to Dismiss Plaintiff's Amended Complaint and Brief in Support (the "Motion") and in support thereof respectfully represents as follows:

## INTRODUCTION

1.      On January 6, 2020, Plaintiff Nick Lepetsos ("Plaintiff") filed his First Amended Complaint (the "Complaint") asserting causes of action against the Defendants for:  (i) Wrongful Discharge, Interference, Retaliation and Discrimination under 29 U.S.C. §§ 1132(a)(1)(B) and 1140 and ERISA § 502(a)(1)(B); (ii) Right to Recovery of Benefits under ERISA § 502 and 29 U.S.C. § 1132(a)(1)(B); (iii) Breach of Fiduciary Duties Under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), ERISA 29 U.S.C. § 1104(a)(1)(A) and (B) and 29 U.S.C. § 1132(a)(1)(B); (iv)Breach of Contract Colorado Wage Claim Act under Colorado Revised Statute § 8-4-101 *et seq.*, and (iv) Unjust Enrichment (the "Claims").   Plaintiff asserts that ERISA provides this Court with the jurisdictional hook to support subject matter jurisdiction over Plaintiff's Claims pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 1132(e)(1), and 28 U.S.C. § 1367.   However, Plaintiff fails to assert facts showing that ERISA governs his Claims or that his Claims give rise to federal-question jurisdiction. Thus, Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Additionally, the undisputed facts in this case establish that ERISA does not govern the discretionary bonus programs that are the subject of this lawsuit. Therefore, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

## STATEMENT OF FACTS

2.      From November 2004 to November 2017, Plaintiff served as Defendants' President. Exhibit A at ¶¶3-4. As President, Plaintiff had the opportunity to receive discretionary compensation in addition to his salary pursuant to the First American Bancorp Stock Appreciation

Rights Plan (the "SAR Plan"), the Deferred Bonus Compensation Plan ("DBCP") [1], and the Executive Management Bonus Program ("EMBP") [2]. Complaint at ¶¶29, 82, and 85.

3.      As described in more detail by the SAR Plan in the first paragraph of page one, the SAR Plan was created to provide additional compensation to current employees based on their value to FASB. *See* Exhibit A, Index 1, page 1; Exhibit A at ¶9. The SAR Plan was not established or maintained for the purpose of providing medical, surgical, hospital care or benefits, benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training, day care centers, scholarship funds, prepaid legal services, or purchasing insurance for the provision thereof. Exhibit A at ¶9.  Further the SAR Plan was not established or maintained for the purpose of making payments or lending money to an agent, employee, representative or labor organization. *Id.*

4.      Further, the SAR Plan was not established or maintained for the purpose of providing retirement income to employees or to result in the deferral of income for periods extending beyond the termination of employment or beyond. Exhibit A at ¶10.

5.      Instead, FASB intended for the SAR Plan to assist FASB in rewarding key personnel for significant contributions to value of FASB's stock, to incentivize key personnel to continue to contribute to FASB's success, and to attract and retain employees who will make such contributions. Exhibit A at ¶11.

---

[1] The Plaintiff is not asserting any claims under the DBCP.  Complaint at ¶84.
[2] The Plaintiff does not allege that the EMBP is a "plan" as that term is defined by 29 U.S.C. § 1002.  Complaint at ¶89. Therefore, the EMBP cannot give rise to federal question jurisdiction.

6.      The relevant portions of the SAR Plan[3] provide as follows:

1.      OBJECTIVE

The objective of the [SAR Plan] is to assist the Company in (i) **recognizing and rewarding** the significant contributions which key personnel and directors of the Company and its subsidiaries have made in increasing the value of the Company's stock; (ii) **providing incentives to Participants in the Plan** to continue to make significant contributions in order to ensure a successful future for the Company; and (iii) **attracting and retaining employees and directors** who will make such contributions.  By meeting these objectives, the [SAR] Plan is intended to directly benefit the interests of the Company's stockholders.[4]

. . .

3.      EFFECTIVE DATE & TERMINATION

. . . The [SAR Plan] shall terminate **eight (8) years** after the Effective Date, or earlier or later as determined by the Board of Directors.

7.      TERMS AND CONDITIONS OF SARS

. . .

7.2  Maximum Term.  Subject to Section 7.3 hereof, each awarded SAR shall only be exercisable once it is granted and has become Vested, but before the Expiration Date.

7.3  Granting of SARs.  Once a  SAR has been awarded pursuant to the [SAR Plan] such awarded SAR shall be deemed granted pursuant to the following schedule:  twenty percent (20%) immediately upon Award and an additional twenty percent (20%) per year each year thereafter, on the anniversary date of the Award, provided, however, that eh Compensation Committee shall, **in its sole and unfettered discretion**, hold the power to reduce or eliminate one or more 20% Grants; further, in the event any 20% Grant is reduced or eliminated, it is within the sole discretion of the Compensation Committee to determine whether then next scheduled 20% Grant shall be reduced, eliminated, or increased by the previously ungranted award.

7.4  Vesting of SARs.  No SAR shall become exercisable until it is vested.  A SAR shall become vested ("Vested") on that date three (3) years following the date on which such SAR was granted.  The date that a SAR

---

[3] A true and correct copy of the SAR Plan, as amended, is attached hereto as <u>Exhibit A, Index 1</u>.
[4] *See* also Complaint at ¶31.

is awarded in no way impacts the vesting of such SAR, as vesting of the SARs directly relate to the date of the Grant Only.

7.5   Termination of Employment…(b)   If a participant ceases to be employed with the Company and/or its subsidiaries (or, in the case of a Director-Participant, ceases to serve on the Board of Directors of the Company) for any reason other than death or Disability, the Participant shall have the right, subject to Sections 7.2 and 8, to exercise his/her Vested SAR(s); the SAR(s) not yet Granted or Vested will be **forfeited** by such Participant.   Notwithstanding the foregoing, if the Participant's employment/directorship was terminated at the request of the Company for cause, the Participant's right to exercise any SARs shall terminate at the time notice of termination is given by the Company to the Participant.

Exhibit A; Index 1, page 1-3 (**emphasis added**).

7.     The SAR Plan was created to provide additional compensation to current employees based on their value to Defendants. Exhibit A at ¶9. The SAR Plan was not intended as a pension or welfare program or any other retirement program. *Id.*

8.     In the Complaint, Plaintiff generally alleges, without more, that the SAR Plan "is a plan, fund or program that is established for the purposes of providing ERISA employee benefits that requires ongoing administrative program (sic) to meet the employer's obligation and thus is a covered employee welfare benefit plans (sic) or retirement plans (sic) within the meaning of 29 U.S.C. § 1002(1) and (2)(A) and are subject to the provisions of ERISA." Complaint at ¶32. Plaintiff fails to assert facts that sufficiently support his Claims, and ERISA governs no part of the SAR Plan, the EMBP, or the DBCP. As such, this Court should dismiss Plaintiff's Complaint pursuant to Fed. R. of Civ. P. 12(b)(6) and 12(b)(1).

## ARGUMENT

A.     **PLAINTIFF'S ERISA CLAIMS SHOULD BE DISMISSED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6).**

9.     A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the formal sufficiency of the plaintiff's statement of its claim for relief in its

complaint. *See Republican Party v. Martin* 980 F.2d 943, 952 (4th Cir. 1992).  A complaint must state a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand dismissal under Rule 12(b)(6). *Wood v. Wells Fargo Bank, N.A.*, 2013 WL 5763101 at * 2 (D. Colo. October 23, 2012), quoting *Iqbal*, 556 U.S. at 678.

10.     Accordingly, in ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court generally must confine itself to the four corners of the complaint and look only to the allegations contained therein.   *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).  However, the Court can also consider "documents referred to in the Complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *Gee*, 627 F.3d at 1186; *Jones Real Estate, Inc. v. Avatel Techs., Inc.*, No. 18-CV-1949 (PKC), 2019 WL 1130154, at *8 (S.D.N.Y. Mar. 12, 2019) (holding that a warranty not attached to the complaint was still admissible for 12(b)(6) dismissal consideration because the plaintiff referenced the warranty throughout is complaint).

11.     In the Complaint, Plaintiff simply states that ERISA governs the SAR Plan and that ERISA provides him with causes of action pursuant to 29 U.S.C. §§ 1104(a)(1)(A) and (B), 1109(a), 1132(a)(1)(B) and 1140. Complaint at ¶32. However, these statutory causes of action

each require that the disputed agreement fall within the definition of a "plan" under ERISA. *McQueen v. Salida Coca-Cola Bottling Co.*, 652 F.Supp. 1471, 1472 (D. Colo. 1987). Thus, for Plaintiff to state a claim under either 29 U.S.C. §§ 1104(a)(1)(A), (b), 1109(a), 1140 or 1132(a)(1)(B), the Complaint must allege facts, which if true, would lead to the conclusion that the SAR Plan is a "plan" as that term is defined by ERISA.

12.     ERISA defines "plan" as either an employee welfare benefit plan or an employee pension benefit plan. *See* 29 U.S.C. § 1002(3). In the Complaint, Plaintiff alleges that the SAR Plan "is established for the purposes of providing ERISA employee benefits that requires ongoing administrative program (sic) to meet the employer's obligation and thus is a covered employee welfare benefit plans (sic) or retirement plans (sic) within the meaning of 28 U.S.C. § 1002(1) and (2)(A) and are subject to the provisions of ERISA." Complaint at ¶32. Because Plaintiff fails to allege facts showing *how* the SAR Plan is a "welfare benefit plan" or "pension benefit plan," the Complaint amounts to nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and, therefore, cannot withstand dismissal under Fed. R. Civ. P. 12(b)(6). *Iqbal*, 556 U.S. at 678.

13.     ERISA defines "employee welfare benefit plan" as any plan, fund, or program established to provide "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services . . ." While the Complaint focuses on the SAR Plan as an "employee pension benefit plan," Plaintiff makes multiple references to an "employee welfare benefit plan" in the first asserted cause of action. Complaint at ¶¶96, 103, 104, 105, 106, and 107. Because, the Complaint contains no facts supporting the allegation that the SAR Plan is an employee welfare benefit plan, Plaintiff's Claims

should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *See* 29 U.S.C. § 1002(1) (emphasis added).

14.     ERISA defines "employee benefit plan" as:

> any **plan,** fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such **plan**, fund, or program— (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the **plan**, the method of calculating the benefits under the **plan** or the method of distributing benefits from the **plan**.

*See* 29 U.S.C. 1002(2)(A) (emphasis added). Instead of alleging facts showing how the SAR Plan provides the benefits described by 29 U.S.C. § 1002(2)(A), Plaintiff simply claims that ERISA governs the SAR Plan because it "is established for the purposes of providing ERISA employee benefits that requires ongoing administrative program (sic) to meet the employer's obligation. . ." Complaint at ¶32. These are the type of "threadbare allegations" that do not pass muster under Fed. R. Civ. P. 12(b)(6).  Because the Complaint fails to allege facts from which the Court could determine if the SAR Plan is a "plan" for purposes of ERISA, the Court should dismiss Counts I, II, and III of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

**B.      THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1).**

15.     When filing its complaint, a plaintiff must overcome the initial presumption that the federal court lacks subject-matter jurisdiction. *Howery v. Allstate Ins.*, 243 F.3d 912, 916 (5th Cir. 2001). A district court has federal-question jurisdiction when an action arises under the Constitution, laws, or treaties of the United States. U.S. Cons. Art. 3, 2; 28 U.S.C. § 1331.

16.     The Tenth Circuit has recognized that a motion to dismiss for lack of subject matter jurisdiction can take one of two forms:  a facial attack, where the movant challenges the sufficiency

of the complaint, or a factual attack, where the movant goes beyond the allegations in the complaint and challenges the facts upon which subject matter jurisdiction depends. *Paper, Allied-Industrial, Chemical and Energy Workers International Union v. Continental Carbon Company*, 428 F.3d 1285, 1292 (10th Cir. 2005). While Plaintiff's Complaint is void of facts that show this Court has federal-question jurisdiction[5], the express language of the SAR Plan establishes that it is not a "plan" governed by ERISA. As such, Plaintiff's Claims do not give rise to federal-question jurisdiction and this Court should dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1).

      **i.**      **ERISA does not Govern the SAR Plan.**

      17.      Plaintiff alleges that this Court has subject-matter jurisdiction pursuant to the federal question presented by ERISA's governance over the SAR Plan. Plaintiff further asserts that this federal question provides supplemental jurisdiction over his state-law claims. As explained above, Title I of ERISA applies to "any employee benefit plan." 29 U.S.C. § 1003(a). ERISA defines an "employee benefit plan" as "an employee welfare benefit plan or employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3). Because the SAR Plan provides no welfare or pension benefit, ERISA governs no part of the SAR Plan and this Court lacks subject-matter jurisdiction over Plaintiff's Claims. *McQueen*, 652 F.Supp. at 1472 ("[T]he existence of a 'plan' is a prerequisite to jurisdiction under ERISA.").

      *a.*      *The SAR Plan is Not a Welfare Plan.*

      18.      ERISA defines a welfare plan as a benefit plan established or maintained for the purpose of providing "medical, surgical, or hospital care or benefits, or benefits in the event of

---

[5] *See* Section "A" of Defendants' Motion. Because Plaintiff fails to allege facts sufficient to show that ERISA governs any of his Claims, ERISA does not give rise to federal-question jurisdiction and this Court has no subject-matter jurisdiction over Plaintiff's Claims.

sickness, accident, disability, death, or unemployment …" 29 U.S.C. § 1002(1). "Providing stock options to certain employees as part of their compensation package is wholly unrelated to medical benefits, or benefits for sickness, accident, disability, death, or unemployment." *Kailin v. Tenneco, Inc.*, 28 F.Supp.2d 478, 486 (N.D.Ill.1998) (citing *Brundage-Peterson v. Compare Health Services Ins. Corp.*, 877 F.2d 509, 510-11 (7th Cir.1989)). The SAR Plan contains no mention of welfare or medical care, provides no benefits for medical events or accidents, and is wholly unrelated to any medical benefit. *See* <u>Exhibit A</u> at ¶¶9 and 11. As such, the SAR Plan is not a welfare plan as defined ERISA.

> b.    *The SAR Plan is Not a Pension Plan.*

19.    ERISA defines an "employee pension benefit plan" or "pension plan" as:

> [A]ny plan, fund, or program which was heretofore or hereafter established or maintained by an employer, or by an employee organization or by both, to the extent that by its **express terms** or as a result of **surrounding circumstances** such plan, fund or program:
>
> > (i)  provides retirement income to employees, or
> >
> > (ii) results in a deferral of income by employees for periods extended to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan."

29 U.S.C. § 1002(2)(A) (**emphasis added**). The Department of Labor has issued regulations limiting the scope of ERISA pension plans by excluding bonus programs defined as 'payments made by an employer to some or all of its employees as bonuses for work performed, unless such payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees." 29 C.F.R. § 2510.3-2(c).

20.    Here, the SAR Plan fails to qualify as an *express* pension plan governed by ERISA because the SAR Plan is bonus plan and contains no terms providing for retirement income or for the deferral of income. In fact, the SAR Plan contains express terms which are contrary to the

provisions of a pension benefit plan, including: (1) the awards of SARs under the SAR Plan are forfeitable; and (2) the maximum term for exercising an SAR is eight (8) years after such SAR was awarded. Exhibit A; Index 1, page 1-3. "These provisions are inconsistent with the objectives of an ERISA pension plan, which is to provide nonforfeitable income for retirement." *Vincenzo v. Hewlett-Packard Co.*, No. 3:12-CV-03480-JCS, 2012 WL 4838442, at \*3 (N.D. Cal. Oct. 10, 2012); 29 U.S.C. § 1053(a) ("[e]ach pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age.").

21.     In *Vincenzo*, the Northern District of California evaluated whether ERISA governed a stock appreciation rights plan with similar language and terms as the SAR Plan here. No. 3:12-CV-03480-JCS at \*3-4. Specifically, the plan in *Vincenzo* stated that its purpose was "(1) to attract and retain the best available personnel for positions of substantial responsibility; (2) to provide additional incentive to Employees and Consultants; and (3) to promote the success of the Company's business." *Id*. The court found that this stated purpose of the plan shows that the plan "was not created to provide retirement income, but rather intended as a bonus plan which, under DOL regulations, is expressly excluded from ERISA's coverage." *Id*. at \*4 (citing to 29 C.F.R. § 2510.3-2(c)).

22.     Similar to the plan in *Vincenzo*, the SAR Plan provides that its purpose is to assist Defendants' by:

> (i)      recognizing and rewarding the significant contributions which key personnel and directors of the Company and its subsidiaries have made in increasing the value of the Company's stock;
>
> (ii)     providing incentives to Participants in the [SAR] Plan to continue to make significant contributions in order to ensure a successful future for the Company; and
>
> (iii)    attracting and retaining employees and directors who will make such contributions. By meeting these objectives, the [SAR] Plan is intended to directly benefit the interests of the Company's stockholders.

Exhibit A, Index 1, page 1; *See* also Exhibit A, at ¶¶9-11. As in *Vincenzo*, the stated purpose of the SAR Plan clearly shows that the SAR Plan is a bonus plan that is expressly excluded from ERISA's coverage pursuant to 29 C.F.R. § 210.3-2(c). *Hahn v. National Westminster Bank, N.A.*, 99 F.Supp.2d 275, 278 n. 2 (E.D.C.Y.2000) (holding that a plan's "express statement of purpose . . . is entitled to weight when determining the nature of the plan.").

23.     Moreover, the SAR Plan fails to provide for payments that "are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees." 29 C.F.R. § 2510.3-2(c). In *Timian v. Johnson & Johnson*, the Western District of New York analyzed whether a long-term incentive plan containing similar terms as the SAR Plan provided for systematically deferred income to employees for retirement. No. 6:15-CV-06125 MAT, 2015 WL 6454766, at *4 (W.D.N.Y. Oct. 26, 2015).The *Timian* plan expressly stated that in the event an employee "cease[s] to be employed by the Company for any reason" . . . "prior to the Vesting Date," . . . the "[Restricted Stock Units] shall become null and void on the Date of Termination." *Id*. The court found that the plan did not provide for the "systematic deferral [of RSU awards] to the termination of covered employment or beyond." Instead, the plan indicated that termination of an employee would void any unvested RSU awards. *Id*.

24.     Similarly, the SAR Plan specifically states that:

[i]f a Participant ceases to be employed with the Company and/or its subsidiaries (or, in the case of a Director-Participant, ceases to serve on the Board of Directors of the Company) for any reason other than death or Disability, the Participant shall have the right, subject to Sections 7.2 and 8, to exercise his/her Vested SAR(s); the SAR(s) not yet Granted or Vested will be forfeited by such Participant. Notwithstanding the foregoing, if the Participant's employment/directorship was terminated at the request of the Company for cause, the Participant's right to exercise any SARs shall terminate at the time notice of termination is given by the Company to the Participant.

Exhibit A, Index 1, page 3.

25.     As in *Timian*, the SAR Plan specifically indicates that the termination of an employee voids any SAR(s) not yet vested or granted. *Id*. Thus, the SAR Plan does not provide for the "systematic deferral of [SAR] awards to the termination of covered employment or beyond." Defendant clearly created the SAR Plan to provide additional compensation to current employees in recognition of their value to Defendant. As such, the SAR Plan is not a "pension benefit plan" governed by ERISA. Therefore, Plaintiff's Claims raise no federal question and the Court lacks subject-matter jurisdiction over Plaintiff's Claims. This Court should dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1).

   **ii.     The Court Does Not Have Supplemental Jurisdiction Over the Remaining Claims.**

26.     In addition to the Claims asserted under ERISA, the Complaint asserts two state law claims: a claim under the Colorado Wage Claim Act, and a claim under Colorado common law for unjust enrichment (collectively the "State Law Claims").   The Complaint asserts that the Court has supplemental jurisdiction over the State Law Claims pursuant to 28 U.S.C. § 1367.

27.     When a district court dismisses all federal claims for lack of subject-matter jurisdiction, the district court is precluded from exercising supplemental jurisdiction over related state law claims.  *Estate of Cummings v. United States*, 651 Fed. Appx. 822, 828 (10th Cir. 2016). Since the Court does not have subject matter jurisdiction over Plaintiff's ERISA based claims, it lacks subject matter jurisdiction over the State Law Claims and the State Law Claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

**CONCLUSION**

For all these reasons, Defendants First American Bank, First American State Bank, The Committee of the First American Bancorp 2008 Stock Appreciation Rights Plan, John "Jay" R. Davidson, John Doe I, John Doe II or Jane Doe I, and First American Stock Appreciation Rights

Plan respectfully request that the Court enter an order dismissing the Complaint in its entirety.

Respectfully submitted,

**SHAPIRO BIEGING BARBER OTTESON**

By:   */s/ John C. Leininger*
     John C. Leininger
     Texas Bar No. 24007544
     jcl@sbbolaw.com
     William P. Dunne III
     Texas Bar No. 24097631
     wdunne@sbbolaw.com

5430 Lyndon B. Johnson Freeway, Suite 1540
Dallas, Texas  75240
Telephone:  (214) 377-0149

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF CONFERENCE

Counsel for Defendants conferred with counsel for Plaintiff on January 21, 2020, regarding the contents of this motion and counsel for Plaintiff advised that he is opposed.

*/s/ John C. Leininger*
John C. Leininger

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of January 2020, the above and foregoing document was served on all counsel of record in accordance with the Federal Rules of Civil Procedure.

*/s/ John C. Leininger*
John C. Leininger